UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 12-76-JBC

MICHAEL GLENN GLASCOCK,                                            PLAINTIFF,

V.                      MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

* * * * * * * * * * * *

This matter is before the court on cross-motions for summary judgment on Michael Glenn Glascock's appeal of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The Court will grant the Commissioner's motion, R.16, and deny Glascock's motion, R. 14, because substantial evidence supports the administrative decision.

At the date of his disability filing, Glascock was a 51-year-old man with a high-school education and past relevant work experience as an assistant transportation director, bus driver, and farmer. AR 20, 57, 149. He alleged disability beginning March 1, 2009, due to squamous cell cancer in remission, depression, a complete neck dissection, removal of lymph nodes in his neck, chest, and arms, loss of memory due to radiation, and spots on his kidney and lung. AR 149, 182. He filed his application on March 24, 2009, and after several

administrative denials and appeals, Administrative Law Judge ("ALJ") Don C. Paris issued a decision determining that Glascock was not disabled. AR 69-83.  Under the traditional five-step analysis, *see* 20 C.F.R. § 404.1520, the ALJ found that Glascock had not engaged in substantial gainful activity since March 1, 2009, the alleged onset date; that he had "severe" impairments consisting of squamous cell cancer of the neck diagnosed in 2005 but currently in remission, a history of neck dissection with subsequent chemotherapy and radiation therapy, a major depressive disorder, "rule out" personality disorder, and opiate dependence in partial remission; that his impairments, whether considered singly or in combination, did not meet or equal one of the Commissioner's Listings of Impairment; that he retained the residual functional capacity ("RFC") to perform a range of light-level work as defined in 20 C.F.R. §404.1567(b) with no more than frequent pushing and pulling with the right upper extremity, never climbing ladders, ropes, or scaffolds, no crawling, occasionally reaching overhead, stooping, kneeling, crouching, or climbing ramps and stairs, no continuous, uninterrupted flexion or extension of the head from side to side, a need to avoid concentrated exposure to full body vibration and avoid hazards such as unprotected heights and moving machinery, and he would have the mental capacity to understand, remember, and carry out simple to more complex work activities in a low-stress, object-focused work environment in which contact with coworkers and supervisors would be casual and infrequent in a nonpublic work setting, and to adapt to routine, gradual changes in work activities; and that, based on his RFC and the testimony of a vocational

expert ("VE"), a significant number of unskilled jobs existed in the economy which Glascock could perform. AR 69-82. The ALJ thus denied Glascock's claim of disability on August 20, 2010. AR 83. The Appeals Council declined to review the denial, AR 1-3, and this action followed.

Glascock's issues on review are: (1) that the ALJ failed to give proper weight to the opinion of his treating physician; (2) that the ALJ did not give sufficient weight to the opinions of one-time examining sources; and (3) that the ALJ gave too much weight to non-examining state agency reviewers. None of these issues will prevail.

First, the ALJ gave proper weight to the opinion of Dr. Valentina Macrinici. Although Glascock asserts that Dr. Macrinici was a treating source, the only evidence Glascock submitted from Dr. Macrinici was a physical capacities evaluation form and a mental medical assessment form, both dated August 2, 2010. AR 612-15. The physical capacity form limits Glascock to lifting 20 pounds occasionally, to standing and walking two hours in an eight-hour day (no more than 15 minutes without interruption), to sitting three hours in an eight-hour day (no more than 30 minutes without interruption), and to further non-exertional restrictions largely consistent with the ALJ's RFC. AR 612-13. The mental assessment form indicates that Glascock has a "seriously limited but not precluded" ability in many areas. AR 614-15.

The ALJ discussed Dr. Macrinici's findings but granted them little weight for three reasons: (1) he found that her physical limitations were not supported by

3

objective medical findings; (2) he questioned whether she was qualified to give an opinion regarding mental impairments since her specialty was internal medicine; (3) it was unclear how Dr. Macrinici reached her conclusions because she submitted no treatment notes, and no evidence shows that Glascock was treated at the University of Kentucky Medical Center ("UKMC"), which Dr. Macrinici listed as her address after March 2009. AR 80-81.

The opinion of a treating source must be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). But a treating source must have provided medical treatment and evaluation as well as have "an ongoing treatment relationship," which is found "when the medical evidence establishes that [the treating source] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [his or her] medical condition(s)." 20 C.F.R. § 404.1502. Here, Glascock asserts that Dr. Macrinici was part of a team from UKMC that was treating him, and that she was a colleague of Drs. Bryan Kee and Philip DeSimone, whose treatment of Glascock is reflected in the evidence. But Glascock does not point to any specific page of the court transcript which shows examination or treatment by Dr. Macrinici, nor is Dr. Macrinici's name mentioned in Drs. Kee and DeSimone's treatment notes. AR 478-563. Glascock has failed to show the existence of a treatment relationship with

Dr. Macrinici.

Even if Dr. Macrinici were a treating source, the ALJ gave "good reasons" for allotting little weight to her opinion. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541 (6th Cir. 2004). The ALJ cited the lack of medically acceptable clinical and laboratory diagnostic techniques to support her restrictions. The evidence shows that Glascock underwent a right-modified neck dissection for metastatic cancer on July 29, 2005, which was followed by chemotherapy and radiation until October, 2005. AR 419. Glascock was forced to use a feeding tube until early 2006 and had subsequent chronic pain issues. Despite these problems, he had returned to his work as a bus driver. *Id.*

On March 9, 2009, shortly after his alleged onset date, Glascock was examined by Dr. Stephen Moses, his treating family practitioner, after falling down a step and hitting his neck, but no acute findings were shown on x-rays. AR 247, 454. Glascock stopped working shortly thereafter following a blackout spell while driving a school bus, but a neurological workup was normal. AR 247, 275, 458. The blackout spell coincided with a relapse of an existing problem of opiate dependence. AR 246, 258, 314-15, 350, 458. Dr. Moses provided medication and recommended physical therapy but did not indicate that Glascock was unable to work. AR 458-59. Dr. James S. Morgan examined Glascock in February 2010 and noted that he continued to do well "overall" with continued postoperative pain in the right side of his neck and limited range-of-motion, along with chronic pain in the right shoulder. Otherwise, apart from poor dentition, the examination was

negative. AR 594-95. Dr. Joshua D. Gibson, a consultative examiner retained by the state agency, examined Glascock in June 2009 and found that he was in no apparent distress, had a normal posture and gait, and had normal strength, sensation, and reflexes. AR 300-01. Glascock was able to perform a squat and heel, toe, and tandem walking without difficulty. AR 301. Postsurgical changes were present in the right side of his neck. Thus, the ALJ did not err on this issue because there is little objective evidence that supports the severe standing, walking, and sitting restrictions given by Dr. Macrinici.

Second, the ALJ gave proper weight to the opinion of the one-time examining sources. Dr. Gibson made a general statement that Glascock would be expected to have difficulty performing activities involving lifting and carrying objects. AR 302. Dr. Gibson did not provide specific weight restrictions for lifting and carrying. As the finder of fact, the ALJ could reasonably have found that a limitation of lifting 20 pounds occasionally and 10 pounds frequently was consistent with Dr. Gibson's statement.

The other one-time examiner, psychologist B. Paul Carney, conducted a mental status evaluation and diagnosed a moderately current major depressive disorder, "rule out" personality disorder, and opioid dependence in partial remission by the claimant's own statement. AR 277. Carney stated that Glascock would have a "fair" ability to relate to others, including fellow workers and supervisors, and a "fair to poor" ability to adapt and respond to stress and pressures found in a day-to-day work setting. *Id.* The ALJ did not repeat this exact language in

6

formulating his RFC, but his finding that Glascock should be limited to a low-stress, object-focused, non-public work environment with only casual and infrequent contact with coworkers and supervisors is consistent with Carney's findings. Moreover, to the extent Carney's restrictions were based on substance abuse, they would not provide a basis for disability pursuant to Public Law 104-121, 42 U.S.C. § 423(d)(2)(C), which provides that "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

    Finally, Glascock's argument that ALJ gave too much weight to state agency examiners is without merit. Tyler Howard, a state agency single-decision maker ("SDM") with no medical credentials, and Dr. James Ramsey, a state agency physician, both opined that Glascock could perform "light-level" exertion with occasional climbing, kneeling, crouching, and crawling. AR 307-13, 583-89. The ALJ found their opinions generally consistent with the evidence of record, but found that Glascock would have additional non-exertional limitations. AR 80-81. An ALJ must consider findings of state agency medical and psychological consultants as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i). Under certain circumstances, however, the opinions of qualified reviewers are entitled to greater weight than treating or examining sources. SSR 96-6p, 1996 WL 374180, at *3. In the present case, no valid opinion from a treating source is recorded, and the ALJ did not give the non-examiners more weight than Gibson and Carney, the one-time

examiners.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Glascock's motion for summary judgment, R. 14, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 16, is **GRANTED**.

The court will enter a separate judgment.

Signed on January 4, 2013

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY